UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

SYLVESTER T. PHILLIPS, JR.,

        Plaintiff,

v.                                                               Case No. 18-C-56

JOHN DIEDRICK,

        Defendant.

─────────────────────────────────────────────

## DECISION AND ORDER

─────────────────────────────────────────────

Plaintiff Sylvester T. Phillips, Jr., who is currently serving a state prison sentence at Green Bay Correctional Institution (GBCI), filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendant John Diedrick was deliberately indifferent to Phillips' threats of self-harm. Presently before the court is Diedrick's motion for summary judgment. Phillips has not responded to the motion for summary judgment, and the time to do so has passed. For the following reasons, Diedrick's motion will be granted and the case will be dismissed.

## BACKGROUND

Because Phillips did not respond to the motion for summary judgment, Diedrick's proposed findings of fact (ECF No. 18) are deemed admitted for the purposes of summary judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment."). At all times relevant to this matter, Phillips was incarcerated at GBCI. Defendant John Diedrick is employed by the Wisconsin Department of Corrections as a Correctional Officer at GBCI.

Phillips has a history of using threats of self-harm to manipulate prison staff members. For instance, Phillips has threatened self-harm when he did not get peanut butter, when "staff would not turn on the Kansas City football game," when he did not get a telephone call, and when he wanted to see Health Services Unit staff. DPFOF ¶¶ 99–102. Phillips has admitted to medical staff that he "enjoys" threatening self-harm or engaging in self-harm because "it amuses him to get people riled up." *Id.* at ¶ 106. Although Phillips threatens self-harm to get what he wants, he has never engaged in more than superficial self-harm.

On October 9, 2017, Correctional Officers Diedrick and McDonough were assigned to work the Restrictive Status Housing Unit (RHU). At 11:00 a.m., Diedrick conducted the medication pass to inmates in RHU. During the medication pass, Phillips presented a small piece of razor blade, smiled, and advised Diedrick that he was going to cut himself. In accordance with institution protocol, Diedrick asked Phillips what prompted those thoughts and encouraged Phillips to hand over any objects he had that could be utilized for self-harm. During this conversation, Phillips explained that it was "easy to win money from the state" by engaging in self-harm and then filing lawsuits. *Id.* at ¶ 22. After multiple attempts to retrieve the razor, Diedrick notified Sergeant Koeller, who was only two cells away, of the situation. Koeller directed Diedrick to stay at the cell front and monitor Phillips while Koeller informed Captain Van Lanen of the incident.

Diedrick remained in front of Phillip's cell and monitored Phillips through the window on the cell door. He continued to encourage Phillips to surrender the razor. Phillips told Diedrick multiple times to just spray him with an incapacitating agent. Diedrick responded that he had no reason to spray Phillips and that a supervisor would return shortly. Phillips then repositioned his rubber mat on its side so he could sit behind it and obscure Diedrick's view of him from his elbow

down. Diedrick directed Phillips to move the mat and to show his arms. Phillips refused, threatened to cut himself, and told Diedrick to spray him. For safety reasons, Diedrick did not enter Phillips cell. Officers are trained to not enter an inmate's cell without other officers available to assist and maintain the safety of the officer in RHU. Instead, Diedrick opened the upper food port, presented his Mark 3 OC streamer, a type of incapacitating agent, and directed Phillips to show his arms. Phillips slouched behind the mat so that the spray would not be effective and lifted his hand to show Diedrick that there was a small amount of blood on his fingers.

At approximately 11:30 a.m, Diedrick informed McDonough, who stood near the entrance of the wing, that Phillips had cut himself. McDonough joined Diedrick at Phillips' cell front and witnessed Phillips sitting behind his mattress. McDonough monitored the cell door while Diedrick retrieved the Mark 9 Phantom OC fogger from the control center and called on the radio for additional staff to retrieve a camera and restraints. Phillips did not engage in any further self-harm while Diedrick retrieved the fogger. Once Diedrick returned, McDonough left the cell front to retrieve a set of wrist and ankle restraints. Diedrick opened the upper food port, presented the fogger, and directed Phillips to show his arms. Phillips lifted his hands over the mat. Diedrick noted there was blood on Phillips' arm but the cut appeared superficial. Diedrick ordered Phillips to come to the door to be restrained, and Phillips stated he would comply. Shortly thereafter, Koeller returned to Phillips' cell with Van Lanen and other staff members to secure and remove Phillips from his cell and strap him into a restraint chair for the protection of both himself and prison staff.

A nurse arrived after staff secured Phillips in the restraint chair. Phillips refused medical assessment and received no treatment. Two days later, a nurse assessed Phillip's lone wound and noted a less than one-inch superficial laceration to his wrist and no active bleeding.

3

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the nonmoving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

**ANALYSIS**

Phillips' claim is predicated on the principle adopted by the Supreme Court in *Estelle v. Gamble* that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. 97,

104 (1976). This principle derives from the fact that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* at 103; *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Phillips' claim differs from those at issue in *Estelle* and *Farmer*, however, in that the threat to his safety from which he claims Diedrick failed to protect him was himself. Phillips asserts that Diedrick ignored his threats of self-harm, which resulted in Phillips giving himself a superficial cut on his arm.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

Prison staff certainly have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775–76 (7th Cir. 2014); *see also Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 889 (E.D. Wis. 2006). While prison staff are under an obligation to protect inmates from self-harm, "[a] risk of future harm must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can

5

be liable for ignoring that risk." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion)).

Whether a sane person who intentionally harms himself in an effort to manipulate prison authorities, or simply because he chooses to do so, should be able to hold prison guards or health care workers liable for failing to stop him is an issue that has yet to be addressed by the Seventh Circuit other than in dicta. *See Freeman v. Berge*, 441 F.3d 543, 546–47 (7th Cir. 2006). The rule holding prison officials liable for the deliberately self-destructive acts of a sane inmate is inconsistent with the basic principle of American jurisprudence that "absent serious mental illness or other form of incapacity, a person has free will and is therefore responsible for his own intentional acts." *Taylor*, 423 F. Supp. 2d at 888 (citing *Morissette v. United States*, 342 U.S. 246, 250–51 (1952) (noting that mature legal systems envision "belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil")). It also empowers inmates to use the threat of self-harm to manipulate corrections staff and may encourage the very behavior the rule is intended to prevent. *See, e.g.*, *Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. 2009), *aff'd* 345 F. App'x 191 (7th Cir. Sept. 17, 2009) (comparing prison officials' efforts to deal with self-destructive inmate to dilemma of facing hostage crisis where same person is both victim and hostage); *Goodvine v. VandeWalle*, No. 16-C-890, 2018 WL 460121, at *8 (E.D. Wis. Jan. 17, 2018) ("[T]he obligation to protect inmates like Goodvine who frequently proclaim their intent to harm themselves places a heavy burden on prisons and their staff wh othen must take action in order to avoid a claim that they were deliberately indifferent to the inmate's welfare."). Notwithstanding these concerns, summary judgment in favor of Diedrick is appropriate because there is no evidence that he was deliberately indifferent to Phillips' needs.

6

As an initial matter, Phillips has not established that he faced any serious harm or medical need. A claim of deliberate indifference begins with an objectively serious medical condition. *See Gomez*, 680 F.3d at 865. In this case, Phillips did not engage in self-harm that caused a serious injury or presented a serious risk of suicide. Instead, he used a small razor to make superficial cuts on his arm with the goal of initiating a lawsuit against GBCI officers. He ultimately refused treatment for those cuts once he was restrained. Indeed, the superficial cuts or scratches on Phillips' arm do not constitute an objectively serious medical condition. *See Davis v. Jones*, 936 F.2d 971, 972–73 (7th Cir. 1991) (noting that a one-inch cut to plaintiff's temple was not sufficiently serious under the Eighth Amendment); *Williams v. Stauche*, 709 F. App'x 830, 834 (7th Cir. 2017) (finding that jail staff did not deprive a pretrial detainee of medical treatment for his single superficial cut after an alleged assault); *West v. Warnock*, No. CV605-047, 2005 WL 2237609, at *3 (S.D. Ga. Aug. 24, 2005) ("given Plaintiff's apparent motivation and history of relatively minor acts of self-harm, it is not apparent to the Court that a known, substantial risk of truly serious harm exists in this case"). Diedrick's motion could be granted on this basis alone.

Even if Phillips had established an objectively serious medical need, he failed to demonstrate that Diedrick was deliberately indifferent. Deliberate indifference requires more than negligence or even gross negligence. It requires that Diedrick knew of, yet disregarded, an excessive risk to Phillips' health or safety. *Farmer*, 511 U.S. at 835; *see also Estelle*, 429 U.S. at 104–05. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). A defendant need not "take perfect action or even reasonable action . . . his action must be reckless before § 1983 liability can be found." *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003). "A state officer is deliberately indifferent when he does nothing . . . or

7

when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). In this case, Diedrick was not deliberately indifferent to Phillips' threats of self-harm. He immediately notified his supervisor of Phillips' threats, who then advised Captain Van Lanen. Diedrick then stayed at Phillips' cell-front as ordered and attempted to persuade Phillips into surrendering the razor, while Phillips told Diedrick to spray him with an incapacitating agent. Once additional staff arrived, the officers placed Phillips in a restraint chair to prevent serious harm. In short, Diedrick acted reasonably to Phillips' threats. Accordingly, Diedrick's motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 16) is **GRANTED** and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  24th  day of January, 2019.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court